# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OAKLEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHENZHEN TOMTOP TECHNOLOGY CO., LTD., <br><br> Defendant. | Case No. 19-cv-07515 <br><br> **Judge Ronald A. Guzman** <br><br> **Magistrate Judge Gabriel A. Fuentes** |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER DIRECTING SERVICE OF PROCESS ABROAD PURSUANT TO FED. R. CIV. P. 4(f)(3)

Plaintiff Oakley, Inc. ("Oakley" or "Plaintiff") moves the Court for entry of an order directing service of process by e-mail under Fed. R. Civ. P. 4(f)(3). In support, Oakley states as follows:

**I.     INTRODUCTION**

Oakley brings this action against Defendant Shenzhen Tomtop Technology Co., Ltd. ("Defendant" or "Tomtop") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). Oakley submits providing notice of this action by e-mail delivery constitutes notice reasonably calculated under all circumstances to apprise Defendant of the pendency of the action and afford Defendant the opportunity to present its objections. *See Luxottica Group S.p.A., et al. v. Lightinthebox Holding Co., Ltd., et al.*, No. 16-cv-5314 (N.D. Ill. Mar. 6, 2018) (Docket Entry No. 24) (Dow, J.) (entering order directing service by mail delivery and e-mail delivery as to Hong Kong and China-based corporations).

1

## II. STATEMENT OF FACTS

Oakley is an internationally recognized manufacturer, distributor and retailer of eyewear, apparel, footwear, outerwear, jackets, gloves, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products"). [1] at ¶ 6. Additional facts relating to Oakley and Defendant's selling and offering for sale of gloves and other products featuring infringements and/or counterfeits of Oakley's trademarks, as laid out in Oakley's Complaint, are incorporated by reference. [1] at ¶¶ 4-26.

Upon information and belief, Defendant is a corporation headquartered in China that operates the website at tomtop.com. [1] at ¶¶ 15-16. The "Legal Window" page for tomtop.com provides a link to the email address legal@tomtop.com after accessing the hyperlink following "Our Legal Department Email Address." Declaration of Jake M. Christensen (the "Christensen Declaration") at ¶ 2. The "Support FAQ" page for tomtop.com provides a link to the email address wholesale@tomtop.com to contact Customer Service. *Id*. at ¶ 3. The "Intellectual Property Rights" page for tomtop.com lists Legal@whosebilling.com as the email address for complaints about violations of intellectual property rights. *Id*. at ¶ 4. Defendant's Facebook page, which links to tomtop.com, lists the email address support@tomtop.com. *Id*. at ¶ 5.

**MEMORANDUM OF LAW**

## II. ARGUMENT

### a. Legal Authority Regarding Service of Process.

Rule 4(f) of the Federal Rules of Civil Procedure governs international service of process on foreign individuals. Service under Fed. R. Civ. P. 4(f)(3) "must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the

text." *FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *8 (N.D. Ohio May 31, 2017). Rule 4(f)(3) empowers the Court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case. *Id.*

Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3), and the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (defendant's argument "misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)."); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1015 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Rio Props., Inc.*, 284 F.3d at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* The task of determining whether a given case requires alternative service of process "is placed squarely within the sound discretion of the district court." *FTC v. Repair All PC, LLC,* 2017 U.S. Dist. LEXIS 83173, at *9. Neither Fed. R. Civ. P. 4 nor any other rule requires that a party first attempt service through the Hague Convention and it is not reasonable for Oakley to wait months or years for its trademark infringement claims to be addressed while the Chinese Central Authority serves documents on the physical address of Defendant, a process that takes 1-2 years.[1]

---

[1] The standard turnaround time for service in accordance with the Hague Convention in China is now between 1 and 2 years. *See Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (noting that the plaintiff had submitted materials to Chinese Central Authority eight months prior, "however, plaintiff has no indication on when service might be effectuated").

Moreover, the Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props., Inc.*, 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.* Courts across the United States, including in this District, have held that service of process by e-mail on China-based defendants pursuant to Rule 4(f)(3) is appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (S.D.N.Y. 2015); s*ee also* Christensen Declaration at ¶ 7 (collecting cases in this District and other Districts).

    b. <u>Attempting Service Through the Hague Convention Is Not Mandatory.</u>

"The Hague Convention does not displace Fed. R. 4(f)(3)." *Gianni Versace, S.P.A. v. Yong Peng, at al.,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Nagravision SA v. Gotech Int'l Tech. Ltd*., 882 F.3d at 498. Rule 4(f) does not require that a party attempt service of process through the Hague Convention as prescribed in Rule 4(f)(1) before petitioning the Court for alternative relief under Rule 4(f)(3). *Gianni Versace, S.P.A. v. Yong Peng, at al.,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Rio Props,* 284 F.3d at 1014. According to its plain language, Fed. R. Civ. P. 4(f)(3) requires that service must be (1) directed by the Court, and (2) not prohibited by international agreement. *Id.* No other limitations are evident from the text. *Id*. Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Rio Props,* 284 F.3d at 1015. Service under Fed. R. Civ. P. 4(f)(3) is "neither a last resort nor extraordinary

4

relief. It is merely one means among several which enables service of process on an international defendant." *Id*. (citations omitted).

Since "[the Supreme Court] has not provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3)," many courts "have reasoned that alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 U.S. Dist. LEXIS 71269, at *40 (N.D. Cal. July 1, 2011). Numerous Courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention, including for China-based defendants. *See Id.* at *40-41*; see also MCM Holding AG, et al. v. Dequn Zhao, et al*., No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (authorizing email service on China-based defendant pursuant to Fed. R. Civ. P. 4(f)(3)); *Nagravision SA*, 882 F.3d at 498; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (same); *In re LDK Solar Secs. Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (same).

   c. <u>Service via Email Is Not Prohibited by The Hague Convention, and China Has Not Objected to Service of Process by Email.</u>

Courts have agreed that service by email is not prohibited by the Hague Convention, including for China-based defendants. *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) ("[t]he Hague Convention does not prohibit service by e-mail or facsimile"); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. at 331-32 (granting motion to serve Chinese defendant by email); *Nanya Tech. Corp. v. Fujitsu, Ltd.*, 2007 U.S. Dist. LEXIS 5754, at *7 (D. Guam Jan. 25, 2007). Further, limiting alternative

service methods to only those explicitly authorized by China would necessarily render Fed. R. Civ. P. 4(f)(3) superfluous and redundant of Fed. R. Civ. P. 4(f)(1).

China has not objected to service by email. To the contrary, China explicitly authorizes service by email in certain situations and service by public announcement "if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law." *See Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745, at *7; Christensen Declaration at ¶ 8. China also explicitly authorizes "[s]ervice by facsimile, e-mail and any other means through which the receipt of the document may be acknowledged" on defendants located outside of China. Christensen Declaration at ¶ 8. Reciprocity dictates that if U.S. residents can be served via email by a Chinese court, the reverse is also true.

While China has objected to service by postal mail, courts have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email. *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (collecting cases holding that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10). "China's objection to service by postal mail does not cover service by email, and these forms of communications differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked." *Id*. at 332. Further, while there may be strict and formal procedures for effectuating service in China, these are of little consequence to this Court's determination. *Nanya Tech. Corp*., 2007 U.S. Dist. LEXIS 5724, at *14 (the Court should not consider the receiving country's laws of service when evaluating whether service pursuant to Fed. R. Civ. P. 4(f)(3) was proper). Accordingly, service of process

by email can be appropriately ordered by this Court and effectuated under Fed. R. Civ. P. 4(f)(3) since it is not prohibited by the Hague Convention, and because China has not objected to service of process by email.

      d. <u>Service via Email Comports with Constitutional Notions of Due Process.</u>

Service via email comports with constitutional notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendant of the pendency of this action and afford it an opportunity to present objections. *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *5.

Courts have also held that communications to email addresses listed on a defendant's website comport with due process: "[w]hile email communications may also go astray or fail to come to the relevant individuals' attention, the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Sulzer Mixpac AG*, 312 F.R.D. at 332.

As such, Oakley respectfully requests this Court's permission to serve Defendant via e-mail delivery to legal@tomtop.com, wholesale@tomtop.com, Legal@whosebilling.com, and support@tomtop.com.

**REQUESTED RELIEF**

Oakley respectfully requests that it be permitted to provide notice of these proceedings to Defendant, including service of process, pursuant to Fed. R. Civ. P. 4(f)(3) via e-mail delivery to legal@tomtop.com, wholesale@tomtop.com, Legal@whosebilling.com, and support@tomtop.com.

It is respectfully submitted that the combination of providing notice via e-mail delivery constitutes notice reasonably calculated under all circumstances to apprise Defendant of the pendency of the action and afford Defendant the opportunity to present its objections.

Dated this 3rd day of December 2019.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiff Oakley, Inc.*
